Clayeo C. Arnold, SBN 65070
JOSHUA H. WATSON, SBN 238058
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jwatson@justice4you.com

Attorneys for Plaintiff
*MOHAMMAD HASSANPOOR*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD HASSANPOOR,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SERVICE KING PAINT & BODY, LLC,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. FAIR LABOR STANDARDS ACT – OVERTIME<br>　(COLLECTIVE CLAIM)<br><br>2. FAIR LABOR STANDARDS ACT – MINIMUM WAGE<br>　(INDIVIDUAL CLAIM)<br><br>3. FAIR LABOR STANDARDS ACT – RETALIATION<br>　(INDIVIDUAL CLAIM)<br><br>***PROPOSED NATION WIDE FLSA COLLECTIVE ACTION***<br><br>**JURY TRIAL DEMANDED** |

1
COMPLAINT

Comes now Plaintiff MOHAMMAD HASSANPOOR, who alleges and complains as follows on information and belief, and who prays for relief from the court.

**SUMMARY**

1. Plaintiff worked for Defendant as Body Technician. His work related to the structural repair of vehicles after motor vehicle collisions. He was non-exempt and was paid on an hourly basis. His hourly rate varied based on the nature of the work he performed. He regularly worked over 40 hours per week. However, he was not paid overtime wages. Neither was he paid for all hours worked. For example, in or about the week of March 11, 2022, Plaintiff worked approximately 98 hours, but was only paid for 31.39 hours, none of which was compensated as overtime. When Plaintiff complained, Defendant retaliated against him with racist and abusive treatment, and ultimately terminated his employment. In a shocking incident, Plaintiff's supervisor changed Plaintiff's name in official company documents to "Good Animal" in an attempt to intimidate Plaintiff after he complained about pay and working conditions, as reflected in the image below of a work order issued to Plaintiff:



2. Defendant had and continues to have a policy of not paying any overtime to employees doing auto body work similar to Plaintiff's work, and the practice is nationwide.

3. A related case is currently pending in U.S. District Court for the Northern District of California, and covers violations of the California Labor Code for employees located in California. It is not national in scope. Plaintiff will opt out of that class action and pursue this matter. The related case is *Erica Moniz, et al. v Service King, Inc. and Service King Paint & Body, LLC*, Case No. 5:18-cv-07372-EJD.

**PARTIES**

4. Plaintiff MOHAMMAD HASSANPOOR (hereafter "PLAINTIFF") is an adult individual residing in California. PLAINTIFF was at all relevant times employed by SERVICE KING PAINT & BODY, LLC at various places of business in Sacramento, Yolo, and Placer Counties in California.

5. Defendant SERVICE KING PAINT & BODY, LLC (hereafter "DEFENDANT") is a private business and employer doing business throughout California, including in Sacramento, Yolo, and Placer Counties in California. DEFENDANT is a nationwide business with its headquarters and nerve center in Texas. DEFENDANT employs about 6,000 people nationwide.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction exists via federal question because Plaintiff alleges violation of the U.S. Fair Labor Standards Act (29 USC § 201) (hereafter, "FLSA").

7. The acts and omissions giving rise to this litigation as to PLAINTIFF occurred in the geographic area of this Court's venue/jurisdiction, specifically in Sacramento, Yolo, and Placer Counties in California, where PLAINTIFF worked for DEFENDANT.

**GENERAL FACTUAL ALLEGATIONS**

8. PLAINTIFF was employed at all relevant times by DEFENDANT.

9. PLAINTIFF's employment with DEFENDANT was at all times as a non-exempt employee entitled to minimum wage and payment for any overtime worked in compliance with FLSA.

10. PLAINTIFF and similarly situated employees were not paid as required by FLSA as stated below:

   a. Body Technicians such as PLAINTIFF routinely work overtime (more than 40 hours per week) when employed by DEFENDANT.

   b. When a vehicle is delivered to DEFENDANT for repair, DEFENDANT seeks to repair the vehicle as quickly as possible.

c. To that end, DEFENDANT requires and/or permits its Body Technician employees to put in long hours to service the vehicles so that they may be returned to DEFENDANT'S customers in as few calendar days as possible.

d. This often results in Body Technicians working 12 to 14 hour days such that employees work more than 40 hours in most workweeks.

e. PLAINTIFF'S hourly pay varied based on the nature of the work he performed in any given period of time. Specifically:

   i. Plaintiff had a base hourly rate that applied to all situations not covered by another specific hourly rate.

   ii. Plaintiff was paid an additional 25% when engaged in the following tasks: body work, frame work, mechanical work, paint work, electrical work.

   iii. Plaintiff was eligible for a $0.50 per hour incentive bonus in addition to the above.

f. The structure of PLAINTIFF'S compensation was typical for all Body Technicians employed by DEFENDANT nationwide in that all such employees: (1) receive a base wage; (2) receive an enhanced wage for specific types of work; and (3) may receive incentive bonuses calculated as an hourly wage enhancement.

g. DEFENDANT did not pay PLAINTIFF hourly wages of 1.5 times the applicable wage rate for PLAINTIFF'S work exceeding 40 hours in a single workweek.

h. DEFENDANT did not pay PLAINTIFF hourly wages of 1.5 times the base wage rate for PLAINTIFF'S work exceeding 40 hours in a single workweek.

i. DEFENDANT has the same nationwide practice of not paying Body Technicians overtime wages at the correct rate.

j. DEFENDANT is subjectively aware of its failure to pay overtime wages. Such subjective awareness comes from employee complaints, including but not limited to the complaints expressly made by PLAINTIFF and the complaints reflected in

the filing of the related *Moniz* matter.

    k. DEFENDANT'S practice of not paying correct overtime wages to its Body Technician employees is intentional and willful as reflected by its failure to correct the practice despite receiving notice of non-compliance.  For example, the *Muniz* matter was filed on December 6, 2018, yet DEFENDANT continued in its practice of not paying Body Technician's overtime throughout PLAINTIFF'S employment, which ended in March of 2022.  If DEFENDANT did not intend to violate overtime rules of FLSA, it would have corrected its practices in the more than three years that passed between more than three years that passed between the *Moniz* matter being filed and DEFENDANT terminating PLAINTIFF after he complained of being underpaid.  Further, when PLAINTIFF made repeated requests for his pay and work hour records, DEFENDANT refused to provide such records, reflecting a guilty mind.

11. DEFENDANT'S conduct was a knowing and deliberate attempt to evade minimum wage laws, including FLSA.  DEFENDANT was aware of all of its obligations under the FLSA, including but not limited to the obligations that employees must be compensated for all time spent working, that employees be paid overtime in compliance with law, and that accurate work time and wage records be maintained and provided to employees.  DEFENDANT made the knowing and deliberate determination not to comply with FLSA and the California Labor Code.  DEFENDANT'S conduct was knowing, intentional, oppressive, and malicious, and justifies an award of punitive/exemplary damages.

//
//
//
//
//
//

# FIRST CAUSE OF ACTION

# FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF

# FAIR LABOR STANDARDS ACTION 29 U.S.C. § 207

# (BY PLAINTIFF and SIMILARLY SITUATED EMPLOYEES AGAINST DEFENDANT)

12. PLAINTIFF hereby incorporates by reference all prior paragraphs.

13. DEFENDANT failed to pay PLAINTIFF and similarly-situated employees for those hours worked in excess of forty hours per week as required by 29 USC § 207 at the rate of one and one-half their applicable non-overtime rate of pay.

14. PLAINTIFF and similarly-situated employees pray for payment of all such wages due, interest on such wages, penalties, liquidated damages, attorney's fees, and costs of litigation and such other relief as the court may see fit to award. This includes but is not limited to such relief as is provided by 29 USC 216(b): payment of unpaid wages, and in addition an equal amount as liquidated damages.

15. Due to the willful nature of DEFENDANT'S behavior, PLAINTIFF and similarly situated employees seek recovery for DEFENDANT'S conduct for the three years preceding the filing of the Complaint in this matter, pursuant to 29 USC § 255. In the alternative, PLAINTIFF and similarly situated employees seek recovery for DEFENDANT'S conduct for the two years preceding the filing of the Complaint in this matter.

# SECOND CAUSE OF ACTION

# FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF

# FAIR LABOR STANDARDS ACTION 29 U.S.C. § 206

# (BY PLAINTIFF AGAINST DEFENDANT)

16. PLAINTIFF hereby incorporates by reference all prior paragraphs.

17. DEFENDANT failed to pay PLAINTIFF minimum wage for all hours worked. For example, in or about the week of March 11, 2022, PLAINTIFF worked approximately

98 hours, but was only paid for 31.39 hours. PLAINTIFF was also not paid for all hours worked on other workweeks.

18. PLAINTIFF prays for payment of all such wages due, interest on such wages, penalties, liquidated damages, attorney-fees, and costs of litigation and such other relief as the court may see fit to award.

## THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF
## FAIR LABOR STANDARDS ACTION 29 U.S.C. § 215
## (BY PLAINTIFF AGAINST DEFENDANT)

19. PLAINTIFF hereby incorporates by reference all prior paragraphs.

20. DEFENDANT at all relevant times was an employer subject to the Fair Labor Standards Act, including but not limited to 29 USC § 215, which renders it unlawful to retaliate against an employee for making a complaint about violations of FLSA.

21. PLAINTIFF complained to DEFENDANT of FLSA violations by complaining to his supervisor orally and in writing via text messages. PLAINTIFF'S complaints included but were not limited to:

    a. Complaining that he was not paid his wages due.
    b. Complaining that he was not provided with records reflecting his work activity.
    c. Complaining that he was not provided with records reflecting his wages due.
    d. Complaining that his employer was not following the law.

22. As explained by the U.S. Department of Labor, Wage and Hour Division, it is unlawful pursuant to FLSA to retaliate against an employee in such circumstances:

    Retaliation occurs when an employer, including through a manager, supervisor, administrator or other agent, takes an adverse action against an employee because they engaged in a protected activity. Examples of protected activity include making a complaint to a manager, employer, or WHD; cooperating with a WHD investigation; requesting payment of wages; refusing to return back wages to the employer; complaints by a third party on behalf of an employee;

consulting with WHD staff; exercising rights or attempting to exercise rights, such as requesting certain types of leave; and testifying at trial.

…

An adverse action is any action that could dissuade an employee from raising a concern about a possible violation or engaging in other protected activity, such as filing a complaint or cooperating in a WHD investigation.

*Source: FIELD ASSISTANCE BULLETIN No. 2022-02, Protecting Workers from Retaliation,* https://www.dol.gov/sites/dolgov/files/WHD/fab/fab-2022-2.pdf

23. After PLAINTIFF first raised issues about his pay, DEFENDANT threatened to fire PLAINTIFF. PLAINTIFF persisted through such threats and DEFENDANT allowed him to continue working. However, when PLAINTIFF continued to complain about not being treated appropriately under the law, DEFENDANT terminated his employment in retaliation on a pretext.

24. Prior to terminating PLAINTIFF, DEFENDANT attempted to break PLAINTIFF'S spirit so that he would stop complaining. Such conduct by DEFENDANT included, among other things:

    a. PLAINTIFF'S supervisor was subjectively aware that PLAINTIFF is a refugee from a nation with limited religious liberty who was granted asylum in America after he converted to Christianity and resisted oppression in his prior homeland. The supervisor was subjectively aware that PLAINTIFF perceived that he could never return to his prior homeland because he would be killed. The supervisor was subjectively aware that PLAINTIFF worked hard to develop his English language skills as part PLAINTIFF'S own process and perception becoming an American, but that PLAINTIFF struggled with expressing himself in English and was in part socially isolated due to a language barrier. The supervisor was subjectively aware that PLAINTIFF was alone in the United States and felt vulnerable. Knowing that PLAINTIFF was in such a state, PLAINTIFF'S supervisor began comparing PLAINTIFF to an animal. The supervisor told

PLAINTIFF that other employees could not do certain difficult work because they were "only animals" but that PLAINTIFF was a "good animal" who would do what he was told.  The supervisor began referring to PLAINTIFF as a "good animal" and went so far as to arrange for PLAINTIFF'S name in certain company documents to be changed to "GOOD ANIMAL."  This is reflected in the image provided in paragraph 1 above, which depicts a portion of a redacted work order.  This kind of document was given to Body Technicians to assign work projects.  The supervisor knew that PLAINTIFF struggled for his balance and sense of worth, and would be demoralized by being referred to as a "good animal," and so-referred to PLAINTIFF in order to break him down emotionally and keep him subservient to DEFENDANT'S unlawful compensation practices.

b. PLAINTIFF'S supervisor assigned PLAINTIFF large amounts of work with unrealistic deadlines so as to overwork PLAINTIFF.  This included, among other things, insisting that PLAINTIFF finish work on a specific vehicle on a timeline that led to PLAINTIFF working alone in the shop alone in the dead of the night as part of a brutal work schedule.  A metal object fell and struck PLAINTIFF unconscious.  When the supervisor discovered this later in the day, while PLAINTIFF was still at work and saying he needed to leave to care for himself, the supervisor not only failed to summon medical help, he pressured PLAINTIFF to continue working.

25. Defendant discharged PLAINTIFF as alleged herein because of his protected activity.

26. After being discharged, PLAINTIFF suffered severe distress due to DEFENDANT'S conduct retriggering PLAINTIFF'S symptoms from past trauma.  PLAINTIFF needed substantial assistance to regain his footing, particularly because of the way the Supervisor's "good animal" language cut deep into PLAINTIFF'S well-being and sense of safety.

27. Nevertheless, when PLAINTIFF had received care, he promptly sought to return to work as a Body Technician for a competitor of DEFENDANT, and was quickly hired due to

his skill and attitude. This reflects the fact that the problem in the relationship between PLAINTIFF and DEFENDANT was the DEFENDANT'S unlawful and detestable behavior.

28. While PLAINTIFF was receiving care, counsel for DEFENDANT and counsel for PLAINTIFF discussed the safekeeping of PLAINTIFF'S tools for work. PLAINTIFF uses a variety of tools to perform his work, and he owns thousands of dollars of such tools. PLAINTIFF'S tools were left at DEFENDANT'S property when he was terminated and instructed not to return. Counsel agreed that PLAINTIFF would be permitted to return to collect his tools at an agreed upon time. When Counsel arranged the time, PLAINTIFF went to collect his tools and learned that the tools had been relocated, and that it appeared that over $2,000 of tools had gone missing. PLAINTIFF'S ability to make a living and mitigate his losses is in part dependent on having the use of his tools. DEFENDANT'S conduct in failing to safeguard and return PLAINTIFF'S tools impaired his ability to mitigate and may constitute further retaliation.

29. As a direct and proximate result of the foregoing, PLAINTIFF suffered injury and attendant damages.

30. PLAINTIFF is entitled "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of [FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages" as well as attorney's fees and costs necessary for the collection of same. See, 29 USC §216(b).

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment as follows:

1. For back pay;
2. For front pay;
3. For unpaid wages;
4. For liquidated damages;

COMPLAINT

5. For compensatory (economic and non-economic) damages;

6. For attorney's fees;

7. For costs of litigation;

8. For reinstatement;

9. For orders as necessary to administrate this matter as a collective action pursuant to FLSA, including but not necessarily limited to ordering notice as appropriate for various stages of the litigation to all potential similarly situated claimants, including any opt-in claimants into this litigation, approving any settlement that may be proposed, and issuing orders to allow administering any settlement or trial proceeds as may be obtained in a trial in this matter.

10. For such other and further relief as this court deems just and proper.

For due process purposes, Plaintiff asserts damages of up to $20,000,000, including all monies due to Plaintiff and similarly situated employees. This number may be adjusted upwards or downwards in keeping with information obtained in conformity with law, and is asserted here for default-judgment purposes.

Respectfully submitted,

Date: May 27, 2022                    CLAYEO C. ARNOLD, PC

                                      By:    /s/ Joshua H. Watson
                                             Joshua H. Watson
                                             Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all matters subject to determination by a jury.

Date: May 27, 2022                    CLAYEO C. ARNOLD, PC

                                      By:    /s/ Joshua H. Watson
                                             Joshua H. Watson
                                             Attorney for Plaintiff

## PLAINTIFF CONSENT FORM

1. I consent to make a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. against my current/former employer named below, and any other related entities or affiliates (herein after collectively referred as "Defendants"). I authorize my attorneys to attach this consent form to any related complaint filed on my behalf, or as may otherwise be appropriate.

2. This consent form relates to my employment associated with

    Service King.

3. I am informed and believe that during my employment, which was within the past three years, there were occasions when I did not receive proper compensation for all of my hours worked.

4. My claims include, but are necessary limited to the following:

    Failure to pay all wages due, including overtime and minimum wages.

    Failure to appropriately process withholdings from paycheck.

    Retaliation for making protected complaints and asserting rights regarding wages/payment.

5. I expressly consent to be a party to a claim or lawsuit filed as a collective action. If this action does not proceed collectively, then I also consent to join any subsequent or other action to assert these claims against Defendants and any other related entities or affiliates.

Date  4/15/2022

Signature  _(signed)_

Name  Mohammad Hassanpour